UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TORO CREDIT COMPANY,

Plaintiff,

v.

CIVIL NO. 01-2349 (DSD/JMM)

REPORT AND RECOMMENDATION

POWERHOUSE EQUIPMENT, INC. a/k/a
POWERHOUSE EQUIPMENT CO. and
POWERHOUSE EQUIPMENT SYSTEMS, INC, and
f/k/a SITEWORK SYSTEMS, INC.;
BRASWELL HOLDINGS, INC.,
f/k/a SOUTHERN SHADE TREE CO. and
SOUTHERN TREE & LANDSCAPE CO.;
POWERHOUSE CAPITAL, INC.;
ROGER S. BRASWELL;
JOHN DOE; and
XYZ COMPANY,

Defendants.

The above matter came on for hearing before the undersigned on March 20, 2002 upon Defendants Roger S. Braswell ("Braswell") and Braswell Holdings Company's ("Braswell Holdings") Motion to Dismiss the Complaint for Lack of Personal Jurisdiction [Docket No. 14]. Edward F. Fox, Esq. appeared on behalf of Plaintiff; Scott M. Tyler, Esq. appeared on behalf of Defendants Braswell and Braswell Holdings. The matter is before the undersigned Magistrate Judge for a Report and Recommendation to the District Court pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B). Upon the following Findings of Fact/Report, it is recommended that the Motion be denied.

MAR 2 8 2002
FILED________
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

## FINDINGS OF FACT/REPORT

## PARTIES/BACKGROUND

This case involves a collection action in which Plaintiff Toro Credit Company ("Toro Credit") seeks to recover approximately $3.4 million from Defendants Braswell and Braswell Holdings (collective referred to herein as the "Defendants"), which guaranteed payment of the credit issued to other defendants. Toro Credit is a Minnesota company with its principal place of business in Bloomington, Minnesota. Braswell is a resident of the State of South Carolina. Braswell Holdings is a South Carolina corporation with its principal place of business in South Carolina. Each alleges that they have had insufficient contact with Minnesota to support the exercise of jurisdiction over them.

## APPLICABLE STANDARDS

We begin by noting familiar principals which govern the consideration of this motion. "To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating, by a prima facie showing, that personal jurisdiction exists." Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998)(citations omitted). Although the plaintiff bears the ultimate burden of establishing the existence of personal jurisdiction at trial by a preponderance of the evidence, on a motion to dismiss, the plaintiff need only make a prima facie showing. Northrup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A., 51 F.3d 1383, 1387 (8th Cir. 1995)(citations omitted). "For the purposes of a prima facie showing, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE) Ltd., 89 F.3d 519, 522 (8th Cir.

1996)(citations omitted).

An analysis of whether a court has personal jurisdiction must take into account state and constitutional requirements. Wessels, Arnold & Henderson v. Nat'l Medical Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995). "The federal court in a diversity case must determine whether [the] defendant is subject to the court's jurisdiction under the state long arm statute, and if so, whether exercise of that jurisdiction comports with due process." Stevens, 146 F.3d at 543 (quoting Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996)). This two-part analysis requires the Court to first ask whether the activity of the defendant falls within the scope of the forum state's long arm statute.

Minnesota's long arm statute provides, in relevant part, as follows:

> As to a cause of action arising from acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any non-resident individual . . . in the same manner as if it were a domestic corporation or he were a resident of this state. The section applies if, in person or through an agent, the foreign corporation or non-resident individual:
>
> (a) Owns, uses, or possesses any real or personal property situated in this state, or
> (b) Transacts any business within the state . . . .

Minn. Stat. § 543.19, subd. 1. Courts have interpreted the Minnesota long-arm statute to extend jurisdiction to the outer limits permitted by the due process clause of the U.S. Constitution. Domtar v. Niagara Fire Ins. Co, 533 N.W.2d 25, 29 (Minn. 1995); Valspar Corp. v. Lukken Color Corp., 495 N.W.2d 408, 410 (Minn. 1992); Jarvis & Sons v. Freeport Shipbuilding, 966 F.2d 1248, 1249 (8th Cir. 1992). Thus, in Minnesota cases, the Court's

focus need only be on constitutional issues, namely whether the assertion of jurisdiction satisfies due process of law.

The Supreme Court has stated that the fundamental due process question to be addressed is whether there are sufficient minimum contacts between the nonresident defendant and the forum state so that the assertion of personal jurisdiction over the nonresident defendant is consistent with the traditional notions of fair play and substantial justice. See, e.g., Burger King Corp. v. Rudzewick, 471 U.S. 462, 472 (1985); Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ("We have said that the defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'"); International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) ("due process requires only that in order to subject a defendant to a judgment in personam . . . he have such minimum contacts with it such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice."). To assist in the application of these broad principles, Courts have articulated several standards to be considered in determining whether the exercise of jurisdiction over a "foreign" defendant is constitutionally permissible.

The concept of "general jurisdiction" hinges upon a defendant's "continuous and systematic contacts with the forum state, regardless of whether the plaintiff's claim or claims are related to any of those contacts." Zumbro, 861 F. Supp. at 778. "General jurisdiction refers to the power of a state to adjudicate any cause of action and does not depend on the relationship between the cause of action and the contacts." Burlington Indus., 97 F.3d at 1103. The exercise of general jurisdiction comports with due

process concerns "because a defendant whose contacts with the forum state are systematic and continuous should reasonably anticipate being haled into court there, even where the plaintiff's claims 'neither arise out of nor are related to the defendant's contacts with the forum.'" Zumbro, 861 F. Supp. at 778.

The Eighth Circuit Court of Appeals has established five factors to consider when determining whether general jurisdiction exists. Northrup King, 51 F.3d at 1388. They are: "(1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interests of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Id. (citations omitted). The fourth and fifth considerations are secondary factors in the inquiry. Id.

Courts have "further elaborated on the third factor -- the relationship of the cause of action to the contacts -- to distinguish between specific and general jurisdiction." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). "The inquiry is whether the non-resident defendant 'has purposefully directed his activities at . . . the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" Northrup King, 51 F.3d at 1387 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "Specific jurisdiction" exists where a court "premises jurisdiction over a defendant upon the relationship of plaintiff's claims and defendant's forum state activities." Zumbro, Inc. v. California Nat'l Prods., 861 F. Supp. 773, 778 (D. Minn. 1994).

## ANALYSIS

The parties have had a relatively lengthy relationship with each other.[1] During the relationship, the parties reached various agreements between and among themselves. On August 14, 1997, Braswell, Braswell Holdings and the Toro Company ("Toro") entered into a manufacturing, marketing, distribution, sales and service rights agreement. At about the same time, Sitework Systems, Inc. ("SSI"), another company owned and controlled by Braswell, entered into a Commission Sales Agent Agreement with Toro. Toro and PowerHouse entered several dealership agreements, including agreements dated February 14, 2000 and December 12, 2000. On October 26, 2000, SSI and Toro executed an Asset Purchase Agreement. That agreement contained a non-compete clause that Braswell executed in his personal capacity. In addition, Braswell traveled to Minnesota to negotiate an agreement with Toro concerning the buy-out of a contract in the Fall of 2000. On February 7, 2001 PowerHouse Capital, another Brasswell company, entered a Corporate Guaranty with Toro Credit.

Although not necessarily directly related to the guaranty agreements which are the subject of the litigation, those guarantees are the culmination of series of agreements involving intentional contact with the State of Minnesota. We are satisfied that

---

[1] The Toro Company and Toro Credit have been involved in formal business relationships with Braswell and companies owned and controlled by Braswell since at least 1996. Over the course of those relationships: (1) Defendant Braswell Holdings was known as the Southern Shade Tree Company and the Southern Tree & Landscape Company; (2) Defendant Powerhouse changed its name from PowerHouse Equipment, Inc. to PowerHouse Equipment Systems, Inc. after discovering the name PowerHouse Equipment, Inc.; and (3) Braswell Holdings and Braswell were two of four members of another company known as Dingo Digging Systems, LLC.

Plaintiff has met its burden of establishing that it would not offend traditional notions of fair play and substantial justice to require Defendants Braswell and Braswell Holdings to appear in Minnesota to defend against the allegations in Plaintiff's Complaint. They have had significant contacts with Minnesota, purposefully directed their activities to Minnesota, and Plaintiff's alleged injuries arise out of and relate to those activities.

Beginning in late 1999, Braswell traveled to Minnesota and corresponded with Toro in Minnesota via mail, email and telephone expressing an interest in forming Toro dealerships to market and sell products. Braswell then formed PowerHouse for the purpose of operating the Toro dealerships in various states. In early 2000, to secure financing to enable PowerHouse to purchase products from Toro, Braswell began negotiating with Toro Credit concerning a line of credit. In response to Braswell's request for credit, Toro Credit asked that PowerHouse provide it with financial documents for its consideration in determining whether to extend the credit. In February 2000, Braswell delivered a Credit Survey and Personal Credit Survey to Toro Credit in Minnesota. The Credit Survey is signed by Braswell and lists him as the President of the PowerHouse company. The Personal Credit Survey is also signed by Braswell and contains financial information regarding Braswell and his wife. At the same time, Braswell sent Toro Credit his personal financial statement indicating that he was the President of SSI and that a substantial amount of his net worth stemmed from his ownership interests in the Southern Shade Tree Company.

In February 2000, Braswell entered a Guaranty Agreement with Toro Credit. The Agreement provides that it shall be governed by the laws of Minnesota. Braswell

entered another Guaranty Agreement with Toro Credit on March 30, 2000. That Agreement also provides that it is governed by Minnesota law. In September 2000, Braswell sent Toro and Toro Credit a Memorandum outlining issues that arose during negotiations between and among Toro, Toro Credit, Braswell and his companies. In the Memorandum, Braswell indicates that he is "the common thread of ownership in [three companies, including SSI and PowerHouse]." The Memorandum also asks Toro Credit to extend PowerHouse's credit line from $625,000 per store to $800,000. In October 2000, Braswell Holdings entered a Corporate Guaranty with Toro Credit. The agreement provides that it is governed by Minnesota law. In addition to the above, Braswell traveled and sent correspondence to Minnesota while negotiating the various agreements.

The contacts between Braswell and Braswell Holdings during which the agreements were negotiated, executed and delivered gave rise to the litigation, and therefore support a finding that this Court may assert specific personal jurisdiction over the Defendants. See, e.g., Marquette Nat'l Bank v. Norris, 270 N.W.2d 290, 295 (1978) (noting that "even one single, isolated transaction between a nonresident defendant and a resident plaintiff can be a sufficient contact to justify exercising personal jurisdiction under due process standards"); Marathon Metallic Building Co. v. Mountain Empire Constr. Co.,653 F.2d 921, 923 (5th Cir. 1981); Reliance Elec. Co. v. Luecke, 695 F.Supp 917, 920-21 (N.D. Ill. 1988); Northwestern Nat'l Bank of St. Paul v. Kratt, 226 N.W.2d 910, 913-14 (Minn. 1975).

Braswell and Braswell Holdings contacts with Minnesota were also continuous and systematic in nature. Thus, the Court may also assert general jurisdiction over the Defendants. Braswell systematically conducted business with Minnesota

companies for at least five years, beginning with his initial contacts with Toro in 1996. Braswell's contacts with Minnesota continued through at least February 2001. Braswell negotiated, corresponded and entered several agreements with Minnesota companies over the course of the five-year period. Braswell directs and has significant ownership interests in Brasswell Holdings and other companies that were involved in negotiations, correspondence and agreements with Minnesota companies.

Braswell Holdings entered into a Corporate Guaranty with a Minnesota company in October 2000. The Guaranty imposed long-term and continuous obligations upon Braswell Holdings, including the obligation to make payments and send information to a Minnesota company. The Supreme Court has noted that:

> where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuous obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well.

Burger King, 471 U.S. at 475-76 (citations omitted).

Moreover, Braswell's and Braswell Holding's contacts were not random, fortuitous or attenuated. Rather, Braswell and Braswell Holindgs intentionally established purposeful business related connections between themselves and Minnesota companies that should have put the Defendants on notice that they could be haled into court in Minnesota. See, e.g., World-Wide Volkswagen, 444 U.S. 286, 297 (1980) ("when a [party] "purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there"); Wessels, Arnold & Henderson v. Nat'l

Medical Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995) (personal jurisdiction established where defendants had a systematic business relationship with a Minnesota resident and made numerous mail and telephone contacts with a Minnesota resident); Nothrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995) (two trips to Minnesota, substantial purchases and extensive written communications showed that the contacts were not random).

Defendants argue that their travels, correspondence and agreements with Minnesota companies collectively are not sufficient to confer this Court with personal jurisdiction because individually they have not had any substantive contacts with Minnesota. The Supreme Court has held, however, that "when commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a primary participant in the enterprise and has acted purposefully in directing those activities." Burger King, 471 U.S. at 479 n. 22. Here, Braswell's companies are interrelated and Braswell admits that he is the common thread of ownership within the companies. It is also clear that Braswell acted purposefully in directing significant activities on behalf of the companies. Thus, it would not offend due process to ascribe Brawell's activities to the companies and vice versa. Moreover, courts look not only at individual contacts by a defendant, but consider all of a defendant's contacts with the forum state in the aggregate and examine the totality of the circumstances. Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 697 (8th Cir. 1995), cert. denied, 516 U.S. 1184 (1996).

Since we find that the Defendants have had continuous and systematic contacts with Minnesota, we are satisfied that this Court can assert general personal

jurisdiction over the Defendants without offending the traditional notions of fair play and substantial justice.

## RECOMMENDATION

For the reasons set forth above, it is recommended that Defendants Braswell and Braswell Holdings' Motion to Dismiss the Complaint for Lack of Personal Jurisdiction be denied.

Dated: March 28, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **April 12, 2001** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **April 12, 2001**.