UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Toro Credit Company,

Plaintiff,

v.

PowerHouse Equipment, Inc.,
Braswell Holdings, Inc.,
PowerHouse Capital, Inc.,
Roger Braswell, John Doe, and
XYZ Company,

Defendants.

Civ. No. 01-2349 (JEL/JGL)
ORDER

---

Edward F. Fox, Esq., and Andrew S. Hansen, Esq., Oppenheimer Wolff & Donnelly LLP, appeared for Plaintiff Toro Credit Company.

Scott M. Tyler, Esq., Moore & Van Allen, PLLC, and Scott Johnson, Esq., Fabyanske, Westra & Hart, P.A., appeared for Defendants PowerHouse Equipment, Inc., Braswell Holdings, Inc., PowerHouse Capital, Inc., and Roger Braswell.

---

This action arises out of Toro Credit Company's (Toro Credit) financing of PowerHouse Equipment, Inc.'s (PowerHouse) purchases of products from The Toro Company (Toro). Toro Credit claims that PowerHouse defaulted by failing to make required payments and selling product out-of-trust. The matter is before the Court on Toro Credit's Motion for Summary Judgment. For the reasons set forth below, the Court grants Toro Credit's motion.

## I. SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) (2000).

## II. BACKGROUND

In late 1999, Roger Braswell formed PowerHouse to operate Toro dealerships. Toro Credit provides financing to Toro dealerships throughout the United States. In early 2000, Toro

DEC 03 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED DEC 03 2002
DEPUTY CLERK'S INITIALS

Credit and PowerHouse entered into financing agreements pursuant to which Toro Credit agreed to provide financing to PowerHouse. Braswell, Braswell Holdings, Inc. (BHI), and PowerHouse Capital (PHC) guaranteed payment of PowerHouse's debt to Toro Credit. After PowerHouse failed to make principal and interest payments for several months and sold financed products without using the proceeds to pay off the corresponding debt, Toro Credit brought this action to recover the guaranteed debt and its secured collateral. By orders of August 6, 2002, and September 11, 2002, the Court stayed the third-party claims made by PowerHouse, PHC, Braswell, and BHI against Toro, dismissed the counterclaims asserted by PowerHouse, PHC, Braswell, and BHI against Toro Credit, and noted that the affirmative defenses of PowerHouse, PHC, Braswell, and BHI are invalid to the extent they mirror the dismissed counterclaims.

## III. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in

the light most favorable to the nonmoving party. *Harlow v. Fitzgerald*, 457 U.S. 800, 816 n.26 (1982); *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1048 (8th Cir. 2002).

**A. PowerHouse**

Toro Credit argues that PowerHouse defaulted by failing to make required payments and selling product out-of-trust. The financing agreements' definition of "default" includes any default by PowerHouse in the payment or performance of any of its repayment obligations, any default under the financing agreements, and Toro Credit's good faith belief that PowerHouse's ability to make timely payments is impaired. PowerHouse agreed to repay Toro Credit the original amount of PowerHouse's obligation, applicable service charges, and interest. The financing agreements gave Toro Credit a security interest in the financed products which required PowerHouse to repay the debt on each product sold from the proceeds of that sale. As of December 2001, PowerHouse had made approximately $1.9 million in out-of-trust sales and had failed to make payments to Toro Credit for several months.

PowerHouse contends that Toro Credit waived the defaults created by the out-of-trust sales by consenting to them. In support of its argument, PowerHouse submitted affidavits that described meetings in February 2001 and September 2001 between PowerHouse and Toro Credit. During the meetings, Toro Credit consented to out-of-trust sales pending PowerHouse's attempt to secure additional financing from outside investors.

The Court does not find PowerHouse's argument that Toro Credit waived the defaults created by the out-of-trust sales persuasive. The financing agreements state that "[a]ny modification of [the] Agreement[s] or any waiver of any provision herein contained shall not be binding upon Toro Credit unless in writing and signed on behalf of Toro Credit by a duly authorized officer" and that "no delay or omission by Toro Credit in the exercise of any right or

remedy shall operate as a waiver thereof." Minnesota law[1] also provides that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subd. 2 (2000). An agreement by a creditor to forbear from exercising remedies under prior credit agreements must satisfy the requirements of section 513.33, subdivision 2. Minn. Stat. § 513.33, subd. 3(a)(3). PowerHouse has not submitted any writing to establish that Toro Credit waived the defaults created by the out-of-trust sales. In addition, PowerHouse does not dispute that it failed to make payments to Toro Credit for several months before the commencement of this lawsuit. The Court therefore concludes that PowerHouse defaulted by failing to make required payments and selling product out-of-trust.

Upon default, the financing agreements provide that PowerHouse's debt obligations "shall, at the option of Toro Credit become at once due and payable without presentment or other notice or demand." Toro Credit argues that PowerHouse is liable for an account stated. An account stated is created when a creditor sends a statement of account to a debtor and the debtor fails to object within a reasonable time. *Am. Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 573 (Minn. Ct. App. 1984). Toro Credit asserts that it submitted monthly bills to PowerHouse and that PowerHouse did not object to them. PowerHouse argues that it cannot be liable for an account stated because it has challenged the amounts billed by Toro Credit. In particular, PowerHouse asserts that it is entitled to credits for devalued Toro inventory, warranty

---

[1] The financing agreements provide that they "shall be governed by the internal laws (as opposed to conflicts of law provisions) of the State of Minnesota." Minnesota courts generally honor choice of law provisions made by parties to a contract. *See Combined Ins. Co. v. Bode*, 77 N.W.2d 533, 536 (Minn. 1956). When the parties to a contract express their intent in clear and unambiguous language, a court will enforce the contract according to its terms in the absence of fraud or other grounds affecting enforcement. *Ortendahl v. Bergmann*, 343 N.W.2d 309, 312 (Minn. 1984).

claims, and used inventory sold as new. These claims involve disputes between PowerHouse and Toro. Because the financing agreements provide that "[PowerHouse] agrees not to assert against Toro Credit any defense, counterclaim, set off, cross complaint or any claim which [PowerHouse] now has or acquires against a Seller [Toro] whether relating to product warranties, express or implied, or otherwise," PowerHouse may not rely on its alleged entitlement to credits from Toro to dispute the amount due to Toro Credit. The Court therefore concludes that PowerHouse is liable to Toro Credit for an account stated.[2]

Toro Credit also argues that PowerHouse is liable for Toro Credit's attorney fees and costs. Under Minnesota law, a litigant is generally not entitled to an award of attorney fees and costs unless authorized by statute or contract. *In re Silicone Implant Ins. Coverage Litig.*, 652 N.W.2d 46, 72 (Minn. Ct. App. 2002). In this case, the financing agreements provide for Toro Credit's recovery of reasonable attorney fees and costs: "[Powerhouse] agrees to pay on demand reasonable attorney fees and other expenses incurred by Toro Credit in enforcing this Agreement and exercising its rights under this Agreement after default by [PowerHouse], or otherwise in connection with pursuing its rights as a secured party with respect to the Collateral." PowerHouse does not dispute its liability for Toro Credit's reasonable attorney fees and costs. The Court therefore concludes that Toro Credit is entitled to an award of reasonable attorney fees and costs.

---

[2] PowerHouse also argues that summary judgment is inappropriate because Toro Credit failed to apply credits for cash premium payments made since January 2002. Beginning in January 2002, Toro required PowerHouse to pay a 50% cash premium on all purchases of Toro equipment. PowerHouse asserts that Toro Credit agreed to apply the premium payments to PowerHouse's delinquent balance and that Toro Credit failed to do so. Toro Credit concedes that PowerHouse is entitled to credits for the premium payments and has credited PowerHouse's account accordingly. Thus, the issue is moot.

Toro Credit also asks the Court to order PowerHouse to return all secured collateral to Toro Credit. At the hearing on Toro Credit's motion, the parties informed the Court that they had agreed to an inventory buy-back agreement. PowerHouse has since returned the secured collateral and Toro Credit has credited PowerHouse's account accordingly. The Court therefore denies as moot Toro Credit's motion insofar as it seeks an order that requires PowerHouse to return the secured collateral.

The parties agree that PowerHouse's delinquent balance is $3,497,114.86 as of November 13, 2002. The parties also agree that interest accrues on the delinquent balance at the rate of $1,083.26 per day. PowerHouse is therefore liable to Toro Credit in the amount of $3,518,780.06, which represents the delinquent balance as of November 13, 2002, plus interest for 20 days.

**B. The guarantors**

Toro Credit asserts that Braswell, BHI, and PHC are also liable for PowerHouse's debt and Toro Credit's attorney fees and costs. "When two competent parties who can readily read and write, sign a guaranty agreement and the plaintiff on the basis of the guaranty extends credit to the other defendant, there is nothing left for a Court to do but to find a judgment against such guarantors." *Watkins Prods. Inc. v. Butterfield*, 144 N.W.2d 56, 58 (Minn. 1966). Braswell, BHI, and PHC guaranteed payment of PowerHouse's indebtedness and agreed to pay Toro Credit's fees, costs, expenses, and attorney fees. The Court therefore concludes that Toro Credit is entitled to summary judgment against Braswell, BHI, and PHC.

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED THAT:

1. Plaintiff Toro Credit's Motion for Summary Judgment [Docket No. 84] is GRANTED IN PART and DENIED IN PART as moot.

2. Defendants PowerHouse, Braswell, BHI, and PHC are jointly and severally liable to Toro Credit for $3,518,780.06.

3. Defendants PowerHouse, Braswell, BHI, and PHC are jointly and severally liable for Toro Credit's reasonable attorney fees and costs.

4. Toro Credit shall file an affidavit that sets forth its reasonable attorney fees and costs within 10 days of the date of this Order.

5. The Judgment shall continue to bear interest at the parties' contract rates until the Judgment is paid in full.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 3, 2002

JOAN ERICKSEN LANCASTER
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov